UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: | CASE NO. 24-1659
MAISON ROYALE, LLC |
DEBTOR |
 | SECTION L (1)

## ORDER & REASONS

Before the Court is an appeal from an order of the United States Bankruptcy Court for the Eastern District of Louisiana, entered June 18, 2024, timely filed by Appellant Rick Sutton ("Appellant" or "Sutton"). R. Doc. 8. Appellee Jack Adams ("Appellee" or "Adams") opposes the appeal. R. Doc. 11. Sutton replied. R. Doc. 12. The Court heard oral argument from the parties, and after a review of the briefing, record, and applicable law, the Court now rules as follows.

I. BACKGROUND

a. Factual Background

In 2011, Sutton and Adams entered into a joint business venture to operate a jewelry and fine arts store in the French Quarter. R. Doc. 8 at 12. To form and manage the venture, Sutton and Adams created the Debtor, Maison Royale, LLC ("Maison Royale"), and it was contemplated that each would make equal capital contributions to share 50% ownership interests in the entity. *Id.* at 12-13. Adams, however, alleges that Sutton never earned his 50% ownership interest because he failed to make his capital contributions, rendering him merely an employee. R. Doc. 11 at 12. In 2014, Sutton and Adams's relationship began to deteriorate, and Sutton was eventually terminated from his employment with Maison Royale allegedly due to poor work performance and personnel issues at the store. *Id.* Thereafter, Sutton began filing lawsuits in state court against Adams, Maison

1

Royale, and various other entities. *Id.* at 12-13. Many of these lawsuits involved the contested ownership of Maison Royale, with Sutton alleging he was a 50% owner and Adams alleging Sutton was not an owner but instead an employee.

### b. Relevant State Court Proceedings

Relevant to this appeal, in November 2014, Sutton filed a breach of contract claim in state court (the "Breach of Contract Case") against Adams, Maison Royale, and another entity, alleging the defendants wrongfully terminated him and withheld salary. *Id.* at 17-18; *Sutton v. Adams*, 2019-0992 (La. App. 4 Cir. 10/12/22), 351 So. 3d 427, 432. He also brought claims on behalf of Maison Royale, as a purported owner, alleging that Adams breached his fiduciary duties. *Id.* During these proceedings, the state district court recognized that there was some question as to what sums of money each partner put into Maison Royale and thus enjoined Adams from preventing Sutton access to the entity's business records or engaging in his job of selling merchandise in the partnership. R. Doc. 8-1 at 95. Despite this preliminary injunction, Adams made the unilateral decision in 2017 to liquidate Maison Royale's remaining inventory and received a total of $775,246.00, which he used to pay himself as one of the entity's creditors. *Id.* When the state district court was informed of Adams's actions, it found him in contempt of court and granted Sutton's Writ of Sequestration, ordering Adams "to deposit all proceeds from the sale of the inventory into the registry of [the] court where they will remain until the court determines the ownership of these funds." *Id.* at 97.

Two years later on April 26, 2019, the state district court ultimately dismissed Sutton's claims on the basis of *res judicata* because in a different state court case involving similar claims Sutton brought against Adams, the state court determined the relevant business organization documents "plainly showed that Mr. Sutton was not a member of Maison Royale and therefore

2

had no right of action for breach of fiduciary duty." *Id.* at 98; *Sutton v. Adams*, 2018-0196 (La. App. 4 Cir. 12/19/18), 318 So. 3d 776, 783, *writ denied*, 2019-0346 (La. 4/22/19), 267 So. 3d 1112. As such, the state district court in the Breach of Contract Case issued a final judgment vacating its Writ of Sequestration as to the $775,246.00. R. Doc. 8-1 at 99. Thereafter, Adams filed a motion on October 11, 2019 requesting that the trial court release the $775,246.00 deposited in the state court's registry. R. Doc 4-44. Sutton opposed the motion derivatively on behalf of Maison Royal. R. Doc. 8 at 25. Thereafter, on January 30, 2020, the state court granted Adams's motion to release the funds.

However, before Adams could obtain the funds, the Louisiana Fourth Circuit stayed the case on February 12, 2020, which prevented him from withdrawing the $775,246.00. R. Doc. 8-1 at 101. Thereafter, the Fourth Circuit affirmed the trial court's decision that Sutton was not an equity interest holder pursuant to res judicata. *Sutton*, 2019-0992 (La. App. 4 Cir. 10/12/22), 351 So. 3d at 432. The Fourth Circuit expressly lifted the stay on November 7, 2022. R. Doc. 17-1. Sutton then sought a writ of certiorari to the Louisiana Supreme Court. Ultimately, in March of 2023, the Louisiana Supreme Court overturned the Fourth Circuit's ruling. *Sutton v. Adams*, 2022-01672 (La. 3/7/23), 356 So. 3d 1017, 1021, *reh'g denied*, 2022-01672 (La. 5/16/23), 360 So. 3d 482. It specifically held that the court in the Breach of Contract Case improperly relied on *res judicata* to dismiss Sutton's claims and remanded the proceedings back to the trial court for further disposition. *Id.* Adams never re-urged his motion to have the funds released directly to him.

   c. **Bankruptcy Proceedings**

On June 20, 2023, Adams voluntarily placed Maison Royale into Chapter 11 Bankruptcy and signed the petition as "managing member." *In re Maison Royale, LLC*, 663 B.R. 316, 320 (Bankr. E.D. La. 2024). The case was later converted to a Chapter 7 Trustee Bankruptcy on

September 20, 2023. *Id.* Sutton filed an emergency motion to dismiss the bankruptcy filing on the basis that it was made without authority, once again claiming he was an owner of Maison Royale and that Adams lacked the ability to place the entity in bankruptcy without his consent. R. Doc. 8-1 at 81-91. The bankruptcy court denied Sutton's motion and his request for reconsideration. *In re Maison Royale, LLC*, No. 23-5760, 2024 WL 2699994, at *1 (E.D. La. May 24, 2024). Moreover, this Court denied Sutton's interlocutory appeal of those orders, dismissing them as premature. *Id.* After Sutton's efforts to dismiss this case were denied, the Chapter 7 Trustee withdrew the $775,246.00 still in the state court's registry fund from the Breach of Contract Case as property of the estate to be administered in the bankruptcy proceedings. R. Doc. 11-1 at 858.

On October 6, 2023, Adams filed "Proof of Claim 4" totaling $1,699,190.04, which included, *inter alia*, the $775,246.00 recently withdrawn from the registry fund and the attorney's fees that he loaned Maison Royale for legal services rendered by two local New Orleans firms. *In re Maison Royale, LLC*, 663 B.R. 316. Sutton and the Trustee then objected to the substantive amount of Adams's claim and contended that a majority of the amount Adams claimed that he was owed had already prescribed. *Id.* After a hearing that occurred over the course of two days, the bankruptcy court issued an order sustaining in part and overruling in part Sutton and the Trustee's objections. *Id.* Specifically, it held that Adams's Proof of Claim 4 would be allowed to proceed in the aggregate amount of $815,191.15. *Id.* at 334. However, the bankruptcy court did not permit Adams to recover the remaining $883,998.89 for various reasons, such as prescription and lack of proof of payment. *Id.*

## II.   APPEAL

On appeal, Sutton challenges only the portion of the bankruptcy court's decision allowing Adams's Proof of Claim 4 to proceed as to the $815,191.15, which includes both (1) the

4

$775,246.00 from the state court registry fund and (2) $39,945.15 in attorney's fees. R. Doc. 8. More specifically, Sutton claims that the bankruptcy court erred in denying his objection as to the $775,246.00 deposited in the state court registry for two reasons. First, he argues that the bankruptcy court improperly construed the $775,246.00 as a loan. Rather, he contends that the money was a capital contribution, meaning Adams had no right to file a proof of claim for the money as a debt. Second, Sutton avers that even if the money is debt, the court should have still dismissed Adams's claim because it had prescribed pursuant to the liberative prescription period of three years for actions on money lent under Louisiana law. As for the $39,945.15 in attorney's fees, Sutton argues that the bankruptcy court improperly allowed Adams to recover this money without sufficient proof that he had indeed loaned these amounts to Maison Royale.

Adams opposes the appeal and argues that the bankruptcy court did not err in its decision. R. Doc. 11. In his opposition, he also contends that Sutton does not have standing to appeal the court's decision, asserting only the trustee can file oppositions to other unsecured creditors' claims in Chapter 7 bankruptcy cases. Sutton replied and claims that he has standing because in the event Adams's claim is improper, Maison Royale would have a surplus of funds after its remaining debts are satisfied to the other creditors, and he would be entitled to receive a portion of this money. R. Doc. 12.

### III.    STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from final judgments of bankruptcy courts. *See* 28 U.S.C. § 158(a). "The standard of review for a bankruptcy appeal is the same standard used by an appellate court reviewing a district court proceeding," which is explained below. *In re Wallace, Rush, Schmidt, Inc.*, No. CV 23-00196, 2023 WL 6382610, at *2 (E.D. La. Sept. 29, 2023) (quoting *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989)). For conclusions of law, the

bankruptcy court's decisions are reviewed de novo, *In re McClendon*, 765 F.3d 501, 504 (5th Cir. 2014) (quoting *In re TransTexas Gas Corp.*, 597 F.3d 298, 304 (5th Cir. 2010)), while findings of fact are reviewed for clear error. *Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577, 586 (E.D. La. 2008). Mixed questions of law and fact are reviewed de novo. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

IV.    ANALYSIS

The parties have raised four distinct issues that this Court must address. First, the Court must determine whether Sutton has standing to appeal the bankruptcy court's decision. Second, the Court must assess whether the $775,246.00 placed in the state court registry fund constitutes a loan from Adams to Maison Royale. Third, the Court must review the bankruptcy court's determination that Adams's claim for the $775,246.00 registry funds had not prescribed. Fourth, this Court must address whether Adams provided enough proof to sustain his claim for $39,945.15 in attorney's fees. The Court takes each issue in turn.

A.  **Sutton Has Standing to Appeal the Bankruptcy Court's Order.**

Before reaching the merits of the appeal, this Court will discuss as an initial matter the issue of standing. Adams contends that Sutton does not have standing to bring the instant appeal because he initially lacked the authority to object to Adam's proof of claim before the bankruptcy court. R. Doc. 11 at 19-21. In support, Adams asserts that in Chapter 7 bankruptcy proceedings such as the one here, courts have routinely held that only the trustee may object to a creditor's

proof of claim, not another creditor like Sutton. *In re Baker Sales, Inc.*, No. 13-12693, 2022 WL 362908, at *3 (Bankr. E.D. La. Feb. 7, 2022) (quoting *In re I & F Corp.*, 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998)); *In re Manshul Constr. Corp.*, 223 B.R. 428, 430 (Bankr. S.D.N.Y. 1998). While the Court agrees that Sutton's ability to object at the bankruptcy court level was questionable in light of this case law, Adams argument is misplaced here because there is a separate and distinct standard for standing to *appeal* a bankruptcy court order that must guide the Court's ultimate determination.

In the Fifth Circuit, the appropriate inquiry for appellate bankruptcy standing is governed by the "person aggrieved" test, which is "more exacting than the test for Article III standing" and "demands a higher causal nexus between act and injury." *Matter of Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018). "Rather than showing the customary 'fairly traceable' causal connection," this test requires a bankruptcy appellant to instead "show that he or she was 'directly and adversely affected pecuniarily by the order of the bankruptcy court.'" *Id.* (quoting *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015); *In re Coho Energy Inc.*, 395 F.3d 198, 202-03 (5th Cir. 2004). "This restriction narrows the playing field, ensuring that only those with a direct, financial stake in a given order can appeal it." *Id.* Additionally, "[s]uch standing must be connected to the exact order being appealed as opposed to the proceedings more generally." *Matter of Dean*, 18 F.4th 842, 844 (5th Cir. 2021).

In the present appeal, the Court finds that Sutton can show that he was "directly and adversely affected pecuniarily by the order of the bankruptcy court." *See Coho*, 395 F.3d at 202-03. But for the bankruptcy court's order approving Adams's proof of claim in the amount of $815,191.15, Maison Royale's assets would likely exceed its debt, and Sutton would be entitled

to a portion of the estate's surplus as a potential 50% equity interest holder.[1] *See Technicool*, 896 F.3d at 386 (suggesting that entitlement to estate surplus is a direct, pecuniary interest but ultimately determining lack of standing on other grounds); *see also Matter of Andreucetti*, 975 F.2d 413, 417 (7th Cir. 1992) (holding individual debtors had standing to appeal confirmation order because if successful there may be a surplus upon emerging from bankruptcy). To explain more thoroughly, if the bankruptcy court would have denied Adams's claim as to the $775,246.00, that money could then be used to satisfy the remaining general unsecured claims of the other creditors that amount to a little less than $300,000. 23-10966, R. Docs. 31-34. It thus follows that the $775,246.00 would not be fully depleted after paying out the rest of the creditors, and there would be a surplus of around $475,000.00 minus administrative expenses still to be distributed. *Id.* Additionally, it is much more likely that Sutton's claim as a creditor will be paid in full if Adams's claim is rejected, given more money will be available to satisfy the credit owed him and the only other creditor claims are relatively minor. *See id.* Accordingly, the Court concludes Sutton has standing to appeal the bankruptcy court's order in this matter and thus proceeds to the merits of his appeal.

### B. The $775,246.00 Placed in the State Court Registry Fund Was a Loan.

The Court first addresses Sutton's challenge of the bankruptcy court's determination that the $775,246.00 that Adams placed into the state court registry was a loan. In coming to this conclusion, the bankruptcy court framed its analysis around the question of whether this court-compelled transaction constituted a loan as alleged by Adams or a capital contribution as alleged by Sutton. *In re Maison Royale, LLC*, 663 B.R. at 323. At first instance, the court stated that it

---

[1] The Court recognizes at least one state court has found Sutton was not an equity interest holder of Maison Royale. However, whether this is conclusively true is still shrouded in facts and subject to pending litigation before multiple state courts at this time. Accordingly, this Court will not make any factual determination as to this issue but will consider the *potential* equity interest that Sutton has in Maison Royale.

would place no import whatsoever upon the lack of a promissory note or other debtor/creditor formalities, given "such formality with insiders is uncommon." *Id.* Rather, the court focused on the substance of the transaction and construed Sutton's objection as an attempt to "recharacterize" Adams's debt as an equity contribution. *Id.*

A "recharacterization" action challenges a claim characterized as debt and requests that the court treat that debt as an equity investment. *In re AutoStyle Plastics, Inc.,* 269 F.3d 726, 749 (6th Cir. 2001); *In re Insilco Technologies, Inc.,* 480 F.3d 212, 217 (3d Cir. 2007). "The party seeking recharacterization of a loan as equity bears the burden of proof." *In re Estill Med. Techs., Inc.*, No. 01-48064-DML-11, 2003 WL 27356581, at *4 (Bankr. N.D. Tex. Sept. 12, 2003), *aff'd*, No. 4:04-CV-400-A, 2004 WL 1773436 (N.D. Tex. Aug. 4, 2004). In *In re Lothian Oil, Inc.*, 650 F.3d 539 (5th Cir. 2011), the Fifth Circuit recognized the court's ability to recharacterize debt as equity vis-à-vis the claims allowance process under 11 U.S.C. § 502(b). *Id.* Specifically, section 502(b)(1) provides that a claim is disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or *applicable law.*" 11 U.S.C. § 502(b)(1) (emphasis added). The *Lothian Oil* panel explained that the "applicable law" referenced in section 502(b)(1) is *state law*. 650 F.3d at 543. A claim based on a debt may, therefore, be disallowed under section 502(b)(1) and instead treated as an equity interest if applicable state law provides grounds for recharacterizing the debt as an equity contribution. *Id.* at 543-44.

Relying on the principles articulated in *Lothian Oil*, the bankruptcy court noted that Sutton failed to point to a single provision of Louisiana law that would support recharacterization of the $775,246.00 as equity. *In re Maison Royale, LLC*, 663 B.R. at 323-24. In fact, the court highlighted that La. R.S. 12:1301(A)(3) defines "capital contribution" as:

> [A]nything of value that a person contributes to the limited liability company as a prerequisite for, or in connection with, membership,

9

> including cash, property, services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services.

*Id.* Given the plain reading of this statutory language, the bankruptcy court held "that it would be a reach to conclude that a court order compelling return of funds paid to reduce the company's debt (consistent with the company's books and records) is tantamount to a prerequisite for, or in connection with, membership." *Id.* at 324. It thus found that Sutton could not prevail on his recharacterization argument that the $775,246 registry funds were equity under Louisiana law. *Id.*

On appeal, Sutton notably does not refute the bankruptcy court's decision to address his arguments within the recharacterization framework and simply reasserts his claim that the $775,246.00 registry funds are more properly characterized as equity contributions rather than loans. R. Doc. 8 at 31-35. In doing so, he essentially asks this Court to reject the bankruptcy court's *Lothian Oil* analysis in favor of the Sixth Circuit's *Roth Steel* factors, which focus more on formalities such as the existence of an instrument evidencing the loan, inclusion of a maturity date, etc. *Roth Steel Tube Co. v. Comm'r*, 800 F.2d 625 (6th Cir. 1986). However, this Court agrees with the bankruptcy court that the *Roth Steel* factors are not the appropriate test in this specific context. The Fifth Circuit in *Lothian Oil* has made clear that state law principles inform recharacterization, not case law arising out of an entirely different circuit as urged by Sutton. *Id.*; *see also In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747 (Bankr. W.D. La. 2013) (applying *Lothian Oil* and assessing whether Louisiana's laws on simulation under the Louisiana Civil Code may serve as a potential means for recharacterizing debt). As such, this Court finds no reason to depart with the bankruptcy court's in-depth analysis referring to Louisiana law on this issue and its reliance on the definition of capital contributions under La. R.S. 12:1301(A)(3). Indeed, Sutton has again entirely failed to either address *Lothian Oil*'s state law requirement or cite to any Louisiana case law favoring the

10

*Roth Steel* factor approach that would warrant a different outcome on appeal. Accordingly, the Court affirms the bankruptcy court's recharacterization analysis and overall finding that the $775,246.00 from the state court registry fund is a loan.[2]

### C. Adams's Claim for the $775,246.00 Registry Funds Is Timely.

Next, the Court will address Sutton's argument that the bankruptcy court erred in finding Adams's claim for the $775,246.00 held in the state court registry is timely. Louisiana Civil Code Article 3494(3) provides a three-year prescriptive period for an action on money lent. Here, Adams deposited the loan into the state court registry fund on June 9, 2017. R. Doc. 17 at 2. He brought the instant bankruptcy proceeding in which he avers entitlement to the registry fund more than seven years later, on June 20, 2023. *Id.* at 5. Clearly, this seven-year period facially exceeds the three-year prescriptive period provided by Article 3494(3). The bankruptcy court held, however, that Adams's claim for return of the loan was timely using two principles of Louisiana limitations law: interruption and suspension. *In re Maison Royale, LLC*, 663 B.R. at 326. First, it found that Adams's October 11, 2019 motion for release of the registry fund, which was brough in the Breach of Contract Case, "interrupted" prescription. *Id.* at 328. Second, it found that the Louisiana Fourth Circuit's stay of that suit, which began on February 12, 2020 and lasted through at least November 7, 2022, "suspended" prescription. *Id.* at 329-30. Thus, the bankruptcy court concluded that Adams's motion was timely. *Id.* at 330. For the following reasons, this Court agrees.

---

[2] To the extent Sutton attempts to recharacterize the $775,246.00 as something other than a loan or equity, this Court must also reject such a claim. As explained above, the party seeking to recharacterize debt bears the burden of proof, and Sutton provides no argument or citation here outside of the *Roth Steel* factors to support his position. *See In re Estill*, 2003 WL 27356581, at *4.

      **i.**      **Adams's October 11, 2019 Motion to Release Registry Funds Interrupted Prescription.**

The bankruptcy court concluded that prescription on Adams's claim for the $775,246.00 was "interrupted" in two ways: (1) by his October 11, 2019 filing of a motion requesting disbursement of the registry funds and (2) by Maison Royale's subsequent "tacit acknowledgement" of its debt to Adams. Because this Court agrees with the bankruptcy court that the motion to disburse funds interrupted prescription, this Court need not reach the issue of tacit acknowledgment.

"Prescription is interrupted when an oblige commences action against an obligor in a court of competent jurisdiction and venue." La. C.C. art. 3462. "If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption." La. C.C. art 3466. That is, the clock completely resets. *Id.* Crucially, filing a motion within a larger lawsuit can qualify as "commenc[ing] action" within the meaning of Article 3462, and thus can interrupt prescription, if the motion constitutes a "pleading presenting a demand." *See In re Succession of Tompkins*, 32,405 (La. App. 2 Cir. 12/8/99), 747 So. 2d 1251, 1254 (holding that a petitioner's motion to reopen a succession and annul a will, which was filed within a larger bankruptcy proceeding, interrupted prescription as to the petitioner's right to challenge the succession proceedings). Essentially, "[w]hen a defendant knows or should know, prior to the expiration of the prescriptive period, that legal demands are made upon him from the occurrence described in the petition filed, prescription is interrupted." *Id.* "[T]he essence of interruption of prescription by suit has been notice to the defendant of the legal proceedings based on the claim involved." *Id.* (quoting *Nini v. Sanford Bros., Inc.*, 276 So. 2d 262 (La. 1973)). Thus, where a motion is "specific about exactly what rights" the party is seeking to enforce, it can serve to interrupt prescription even if it is not filed as a separate lawsuit. *See id.*

Here, the bankruptcy court explained that on October 11, 2019, in the Breach of Contract Case, "Adams filed a motion seeking release of the funds and served all counsel of record." *In re Maison Royale, LLC*, 663 B.R. at 328. It further found that "[c]rucial to this court's ruling now, Maison Royale was a party to that litigation and received notice that Mr. Adams filed a pleading seeking to recover the funds." *Id.* Thus, it reasoned that this pleading sufficiently provided "notice" of "legal proceedings" to Maison Royale within the meaning of Louisiana's interruption law. *Id.* Given that "[p]rescription commences to run anew from the last day of interruption," the bankruptcy court concluded that "at this point in the saga, Mr. Adams still had at least three years from October 11, 2019, within which to take further action to collect this debt." *Id.* That is, the three-year prescriptive period restarted, at the earliest, on October 11, 2019.

Sutton argues that the bankruptcy court's ruling on this point was erroneous. Notably, he does not challenge its conclusion that a motion can serve as a "notice of legal proceeding" sufficient to interrupt prescription pursuant to Article 3462. Rather, he challenges whether Maison Royale, in fact, received such notice. Sutton makes two arguments in support. First, he contends that at the time Adams filed the motion, "Maison Royale was only a nominal defendant due to the procedural requirement that the company be a party to the lawsuit." R. Doc. 8 at 26. Second, he avers that "[O]n April 26, 2019, the state court dismissed Sutton's claims against and on behalf of Maison Royale. Accordingly, Maison Royale was not even a nominal defendant to the litigation at the pertinent time" of October 11, 2019. *Id.*

The Court is not persuaded by these arguments. Sutton provides no explanation or citation for his argument that Maison Royale was only a "nominal defendant" in the Breach of Contract Case. Moreover, case law establishes the opposite. The record in the case shows that Sutton brought a "derivative claim, on behalf of Maison Royale" against both Adams and Maison Royale

13

itself. *Sutton*, 2019-0992 (La. App. 4 Cir. 10/12/22), 351 So. 3d at 431. Notably, "in a derivative action, the shareholder bringing the suit is only a nominal plaintiff, and the real party plaintiff is the corporation because the shareholder claims to be suing on behalf of the corporation." *Robinson v. Snell's Limbs & Braces of New Orleans, Inc.*, 538 So. 2d 1045, 1048 (La. Ct. App. 1989). Accordingly, Sutton—not Maison Royale—is the nominal party as to the derivative action. *Id.* Overall, the Court observes that Sutton himself concedes in his briefing that in the Breach of Contract Case, he brought claims "against and on behalf of Maison Royale." R. Doc. 8 at 26. His argument that Maison Royale was not a true party to the suit therefore fails.

  Next, Sutton argues that Maison Royale was not a party "at the pertinent time" of Adams's October 11, 2019 filing because "[o]n April 26, 2019, the state court dismissed Sutton's claims against and on behalf of Maison Royale." Again, this argument lacks merit. Sutton offers no support for his position that the dismissal of the claims immediately ended Maison Royale's presence in the suit. Rather, the record reveals the opposite. Sutton himself explains in his briefing that on October 15, 2019, four days *after* Adams filed his motion, Sutton filed an opposition to Adams's motion to release funds "derivatively on behalf of Maison Royale." R. Doc. 8 at 25. Clearly, then, Sutton's presence as a party on behalf of Maison Royale did not terminate the moment his claims were dismissed. Instead, he continued to participate as a litigant by challenging the disbursement of funds, appealing the state court's decision, and ultimately taking a writ of certiorari to the Supreme Court.

  Thus, this Court concludes overall that the bankruptcy court properly found that "Maison Royale was a party to [the state court] litigation and received notice that Mr. Adams filed a pleading seeking to recover the funds." *In re Maison Royale, LLC*, 663 B.R. at 328. The Court further agrees that the motion constituted a "[n]otice to a defendant of legal proceedings" because

Adams's motion plainly asserted that he was entitled to, and requested disbursement of, the registry fund. R. Doc. 4-44. As such, the Court finds that the bankruptcy court correctly determined that prescription was interrupted on October 11, 2019, starting the clock anew.

Briefly, this Court observes that although it is clear that the interruption *began* on October 11, 2019, it is not immediately apparent when the interruption *ended*. This is relevant because "[p]rescription commences to run anew from the *last day* of interruption." La. C.C. art 3466. (emphasis added). Here, it is not obvious when the "last day of the interruption" occurred. The bankruptcy court appears to have believed that the clock would begin to run again on the same date Adams filed the motion: October 11, 2019. Alternatively, the interruption may have ceased on January 30, 2020, the date upon which the state court granted Adams' motion. Another possibility advanced by Adams is that the interruption has in fact *never* ceased because the Breach of Contract Case, in which the motion was filed, is still ongoing. *See* Louisiana Civil Code Article 3463 ("An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending."). Although the Court has located cases explaining that a motion can interrupt prescription, it has not located any cases clearly explaining the duration of the interruption in the motion context.

Ultimately, the Court finds no need to delve into this murky area of state law in an attempt to conclusively determine the "last day of the interruption" in this case. Here, the interruption clearly began on October 11, 2019, when Mr. Adams filed the motion for disbursement. As explained below, even if prescription began to "run anew" on that same date, Mr. Adams' suit is timely. Thus, this Court need not reach the issue of when the interruption ceased. Rather, the Court

15

will merely presume, as did the bankruptcy court, that prescription began to "run anew" on October 11, 2019.

### ii. Prescription Was Suspended While the Breach of Contract Case Was Stayed.

Next, the bankruptcy court concluded that prescription was suspended between February 12, 2020 and October 12, 2022. *In re Maison Royale, LLC*, 663 B.R. at 330. In so doing, it noted that on February 12, 2020, less than two weeks after the state court granted Adams's motion to disburse funds, the Louisiana Fourth Circuit stayed the Breach of Contract Case—and thus the distribution—pending Sutton's appeal. *Id.* at 329. This stay remained in place, according to the court, at least through October 12, 2022, the date on which the Fourth Circuit affirmed the trial court's decision. *Id.* at 330. The bankruptcy court accordingly held that prescription was "suspended" during this period pursuant to the doctrine of "*contra non valentum*." *Id.* This doctrine applies to "prevent the running of prescription" where "there was some condition . . . connected with the proceedings which prevented the creditor from suing or acting." *Id.* (quoting *Jenkins v. Starns*, 2011-1170 (La. 1/24/12), 85 So. 3d 612). The bankruptcy court reasoned that the Fourth Circuit's stay imposed on the Breach of Contract Case was such a condition which prevented Adams from further acting to recover the registry fund. *Id.* Although Sutton contended that Adams could have filed a separate suit to collect the registry funds, the court patently rejected this argument. It concluded that:

> [H]ad Mr. Adams attempted to collect the funds through a separate legal action, he would have undoubtedly been accused by Mr. Sutton of violating the stay and very likely held in contempt by the Fourth Circuit. This court refuses to punish Mr. Adams for obeying a stay imposed by the Fourth Circuit.

*Id*. Accordingly, the court found that suspension of the prescriptive period was applicable.

Sutton challenges the bankruptcy court's conclusion that the stay of Adams's Breach of Contract Case prevented him from filing a separate suit to recover the registry fund. In support, he

cites two cases: *Lee v. Champion Insurance Company*, 591 So. 2d 13664 (La. App. 4 Cir. 1991) and *White v. Haydel*, 593 So. 2d 421 (La. App. 1 Cir. 1991). In both these cases, the plaintiffs filed suit against Champion Insurance Company after the respective prescriptive periods had run on each of their claims. However, they argued that prescription was suspended and thus their claims were timely because they received notices explaining "the [d]istrict [c]ourt ha[d] *stayed* all suits and seizures already filed against Champion." *Lee*, 591 So. 2d at 1366 (emphasis added). The courts disagreed, explaining that "in order for the stay order to have any meaning, it presupposes that a timely lawsuit has been filed, otherwise there is no need to stay proceedings." *Id.* Thus, the courts held that nothing about the notice "could have led reasonable persons to a conclusion that they could not timely file suit." *Id.* Essentially, the plaintiffs could not rely on the fact that stays had been issued in unrelated suits against the same defendant for their failure to file timely. *See id.*

Sutton attempts to argue that as in *Lee* and *White*, "the stay only stopped the lawsuits identified in the stay order from continuing to proceed." Thus, he avers that Adams could have simply filed a new lawsuit claiming entitlement to the registry funds. However, Sutton's reliance on this case law for the proposition that a stay can be avoided by simply filing a new suit misreads those decisions. In those cases, the key fact was that the plaintiffs entirely failed to file *any* suit within the prescriptive period. Rather, they attempted to rely on the fact that *other* plaintiffs' unrelated suits against the same liquidated defendant had been stayed to excuse their failure to timely file. That is not the case here. It is undisputed that Adams and Sutton were actively litigating entitlement to the registry fund in the Breach of Contract Case. The trial court entered Judgment for Adams, and Adams moved for disbursement of the $775,246.00 in the registry fund. Before this money could be released, Sutton appealed the decision and the Fourth Circuit stayed execution of the Judgment pending appeal. This Court agrees with the bankruptcy court that had Adams

brought a separate suit seeking to establish his entitlement to the same $775,246.00 ordered disbursed in the Breach of Contract Case, he would have risked violating the Fourth Circuit's stay order. Accordingly, prescription was suspended throughout the duration of the Fourth Circuit's stay. The stay was entered on February 12, 2020 and expressly lifted on November 7, 2022.[3] The Court thus concludes that this period "cannot be counted toward the accrual of prescription." La. C. C. art. 3472

### iii.    The Court's Overarching Conclusion as to the Prescription Issue

In conclusion, the Court now endeavors to provide a comprehensive summary of its findings as to the prescription issue in this matter. As explained above, this Court agrees with the bankruptcy court that the three-year prescriptive period on Adams's claim for the $775,246.00 began on June 9, 2017 but was interrupted on October 11, 2019 – the same date Adams filed his motion to release the registry funds in state court. At most, prescription then completely reset and began to run anew from that date for 124 days until February 12, 2020 when the Louisiana Fourth Circuit issued its stay. The Court finds the Fourth Circuit's stay suspended the running of prescription up until November 7, 2022 when it issued its ruling affirming the trial court's decision. At this point, the prescriptive period began to run again from that date for another 225 days until June 20, 2023 when Adams instituted the instant bankruptcy proceedings. By this Court's calculations, this means only 349 days had run as to Adams's claim for the $775,246.00, which is well within the three-year prescriptive period. Accordingly, the Court finds, like the bankruptcy court, that Adams's claim for the $775,246.00 has not prescribed.

---

[3]    The bankruptcy court used October 12, 2022, the date of the Louisiana Fourth Circuit's ruling, as the operative date for the end of the stay. However, in supplemental briefing as to the instant appeal, the parties have produced an order issued by the Fourth Circuit on November 7, 2022 which expressly lifted the stay. R. Doc. 17-1. The Court thus finds that the stay expired on this date.

**D. There is Enough Evidence to Support Adams's Claim as to the $39,945.15 in Attorney's Fees.**

Lastly, this Court addresses Sutton's challenge to the bankruptcy court's order approving Adams's claims for $39,945.15 in attorney's fees. Specifically, the bankruptcy court found that Adams had loaned funds to Maison Royale in order to pay both Barrasso Usdin Kupperman Freeman & Sarver, LLC and Lugenbuhl Wheaton Peck Rankin & Hubbard for representing the entity in various matters. *In re Maison Royale, LLC*, 663 B.R. at 334. However, Sutton contends on appeal that Adams lacked evidentiary support to substantiate that the payments made to these firms were indeed loans to Maison Royale. R. Doc. 8 at 37-38. This Court disagrees. In reaching its conclusion, the bankruptcy court relied on Maison Royale's engagement letters with each firm. *In re Maison Royale, LLC*, 663 B.R. at 334. Upon review of this evidence, this Court finds that these documents unequivocally show that Maison Royale, not Adams was to be represented by Barrasso and Lugenbuhl and that Adams as guarantor made the payments for the attorney's fees at issue here. R. Docs. 4-22; 4-23. Accordingly, this Court finds that the bankruptcy court did not commit clear error in concluding the $39,945.15 were loans to Maison Royale now owed to Adams in the bankruptcy proceedings.

**V. CONCLUSION**

For the foregoing reasons;

**IT IS HEREBY ORDERED** that the bankruptcy court's June 18, 2024 order allowing Adams's Proof of Claim 4 to proceed in the aggregate amount of $815,191.15 is **AFFIRMED**.

New Orleans, Louisiana, this 31st day of March, 2025.

United States District Judge

19